UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HOJUNE YOO, et al.,

Plaintiffs,

v.

HOMESITE INSURANCE COMPANY,

Defendant.

CASE NO. C25-1752JLR

ORDER

## I. INTRODUCTION

Before the court is Plaintiffs Hojune Yoo and Hyejoe Yoon's (together, "Plaintiffs") motion to compel appraisal pursuant to their insurance policy with Defendant Homesite Insurance Company ("Homesite"). (Mot. (Dkt. # 14); Reply (Dkt. # 22).) Homesite opposes the motion. (Resp. (Dkt. # 17).) The court has considered the parties' submissions, the relevant portions of the record, and the governing law. Being fully advised, the court GRANTS Plaintiffs' motion to compel appraisal.

## II. BACKGROUND

This insurance dispute relates to water damage to Plaintiffs' home caused by a burst hot water line in their crawlspace. (*See* Gifford Decl. (Dkt. # 20) ¶ 5.) On April 23, 2025, Mr. Yoo noticed a "strange water noise" in the laundry room of Plaintiffs' home. (Compl. (Dkt. # 1-2) ¶ 14.) He called Blackbull GC & Plumbing ("Blackbull") that same day to perform emergency repairs to the broken pipe. (*Id.* ¶¶ 14-15.) Blackbull advised Mr. Yoo that, given the amount of saturation, the standard practice would be to fully remove and reconstruct the flooring. (*Id.* ¶ 15.) Mr. Yoo promptly notified Homesite and opened a claim. (*Id.*; *see also* Gifford Decl. ¶ 5.) On April 25, 2025, Blackbull made further repairs and installed a dehumidifier. (Compl. ¶ 16.)

On April 25, 2025, Homesite adjuster Nicolas Gifford inspected the property. (Gifford Decl. ¶ 7.) He opined that the insulation affected by the leak would need to be repaired but the subfloor could be dried rather than replaced. (*Id.*) He also observed that the dehumidifier was draining back into the crawlspace, perpetuating the moisture. (*Id.*)

Homesite retained Rainbow Restoration to inspect the property. (*Id.* ¶ 8.) Rainbow estimated it would cost $2,164.56 to replace the insulation and dry the subfloor. (*Id.* ¶ 9, Ex. A.) Accordingly, Mr. Gifford informed Plaintiffs that the loss fell below their $5,000 deductible. (*Id.* ¶ 11, Ex. B.)

On April 26, 2025, Plaintiffs informed Mr. Gifford that their contractor had recommended removal of the subfloor, the flooring above the crawlspace, and the drywall above the crawlspace. (*Id.* ¶ 10.) On April 28, 2025, Plaintiffs asserted that another contractor had confirmed "100% moisture" in the subfloor. (*Id.* ¶ 12.) Mr.

Gifford told Plaintiffs that they needed to begin mitigation actions and prepared a reservation of rights letter. (*Id.* ¶ 13, Ex. C.)

Plaintiffs subsequently hired a general contractor, All New Again ("ANA") to perform mitigation and repairs. (*Id.* ¶ 15.) ANA invoiced Plaintiffs $22,971.18 for the mitigation work and estimated that reconstruction and repairs to the property would cost $199,893.96. (*Id.* ¶ 16, Ex. E.) Homesite then retained Service Master of Bellingham to perform a second inspection of the property. (*Id.* ¶ 17.) After Service Master reported that it did not find elevated moisture levels, Homesite revised its estimated amount of loss to $2,815.88, which was still below Plaintiffs' $5,000 deductible. (*Id.* ¶ 18, Ex. F.)

Plaintiffs filed this action in Snohomish County Superior Court on August 8, 2025. (Compl. at 1.) They assert claims for violation of the Washington Consumer Protection Act, ch. 19.86 RCW; violation of the Insurance Fair Conduct Act, ch. 48.30 RCW; breach of contract; breach of the duty of good faith; negligence; and a declaratory judgment. (*Id.* ¶¶ 52-78.) On September 11, 2025, Homesite removed the action to this court on the basis of diversity jurisdiction. (Not. of Removal (Dkt. # 1) ¶¶ 5-23.)

On June 5, 2026, counsel for Plaintiffs demanded an appraisal pursuant to the terms of their insurance policy. (*See* Gifford Decl. ¶ 19, Ex. G.) In relevant part, Plaintiffs' insurance policy provides:

> **F. Appraisal**
>
> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the

> choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> 1. Pay its own appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally.

(Florey Decl. (Dkt. # 15) ¶ 2, Ex. 1 ("Policy") at 3.[1]) The Policy does not define "amount of loss." (*See generally* Mot.; Resp.) On June 10, 2026, Homesite denied Plaintiffs' appraisal demand, reasoning that "[t]he primary dispute between the parties concerns the scope of covered damages, which is a coverage issue, not a disagreement solely over the 'amount of loss.'" (Gifford Decl. ¶ 23; Florey Decl. ¶ 5, Ex. 4.)

On August 28, 2026, Plaintiffs filed the motion to compel appraisal now before the court. (*See* Mot.) The motion is fully briefed and ripe for decision.

## III. ANALYSIS

As Plaintiffs point out, appraisal provisions in insurance policies are enforceable under Washington law and are intended to provide an efficient means of resolving valuation disputes. (Mot. at 4); *see Keesling v. W. Fire Ins. Co. of Fort Scott, Kansas*, 520 P.2d 622, 626 (Wash. Ct. App. 1974). Appraisal provisions are justified "in the expectation that [they] will provide a plain, inexpensive, and speedy determination of the extent of the loss." *Id.* at 625. Federal courts interpreting Washington law regularly hold

---

[1] The court refers to the page numbers in the CM/ECF header when citing to the exhibits to Ms. Florey's declaration.

that appraisal provisions like the one at issue here do not impose a condition precedent that the parties agree on the scope of loss. *See, e.g.*, *Bosh v. USAA Gen. Indem. Co.*, No. C24-6016TMC, 2025 WL 1331479, at *3 (W.D. Wash. May 7, 2025) (so holding); *see also Carpenter v. Am. Fam. Mut. Ins. Co., S.I.*, No. C22-5171DGE, 2023 WL 12260850, at *2-3 (W.D. Wash. July 18, 2023) (rejecting insurer's argument that a coverage dispute precluded the enforcement of an appraisal provision); *Graham v. Country Mut. Ins. Co.*, No. 2:20-CV-00189-SAB, 2021 WL 5239795, at *2 (E.D. Wash. Feb. 9, 2021) (finding defendant's "argument that the parties' dispute is one of coverage and not amount of loss" "irrelevant" in determining whether to compel appraisal); *Kochendorfer v. Metro. Prop. & Cas. Ins. Co.*, No. C11-1162MAT, 2012 WL 1204714, at *1, 4-8 (W.D. Wash. Apr. 11, 2012) (considering scope of coverage where parties engaged in the appraisal process before plaintiff filed suit).

Homesite urges the court to deny Plaintiffs' motion to compel appraisal because:

> Before a claim is proper for appraisal, widely established insurance standards require an agreement regarding the scope of loss. "Scope of loss" as used in this context means "what needs to be repaired, replaced or restored," as compared to the "amount of loss" that is subject to appraisal, which is "what those repairs, replacements or restorations will or should cost."

(Resp. at 5.) Homesite does not, however, cite any Washington authority to support this assertion, nor does it address the many cases Plaintiffs cited in their motion. (*See generally id.*; *see also* Mot. at 4-5 (compiling cases).) Instead, Homesite relies on a single Georgia Court of Appeals decision for the proposition that appraisal is inappropriate because a disagreement about the extent of damage is a disagreement over coverage. (*See id.* at 6 (quoting *Lam v. Allstate Indem. Co.*, 755 S.E.2d 544, 546 (Ga. Ct.

App. 2014)).) The court is not persuaded to depart from the weight of Washington authority by Homesite's out-of-state case law. Accordingly, the court holds that the parties' dispute regarding the scope of Plaintiffs' loss does not preclude appraisal and grants Plaintiffs' motion to compel.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion to compel appraisal (Dkt. # 14). In accordance with Plaintiffs' insurance policy, Homesite is ORDERED to identify and disclose to Plaintiffs its competent and disinterested appraiser within 20 days of the entry of this order. (*See* Policy at 3.) The parties shall thereafter proceed with the appraisal process as set forth in the insurance policy.

Dated this 19th day of October, 2026.



JAMES L. ROBART
United States District Judge